THE PEOPLE *ex rel.* Daniel W. Miller

*v.*

JOHN LEE.

*Filed at Springfield November 17, 1884.*

| 112 | 113 |
| 25a | 309 |
| 112 | 113 |
| 127 | 39 |
| 127 | 40 |
| 112 | 113 |
| 82a | 491 |
| 112 | 113 |
| 214 | 5419 |

1. TAXATION *by cities and villages—as to the mode of levying taxes, and the prerequisites thereto—the act of 1877 construed.* It was the intention of the legislature, in the act of May 23, 1877, to require incorporated villages and towns, as well as cities, to follow a mode of assessment and collection which would limit the sum to be assessed and collected so as not to exceed the amount before that time specifically appropriated for particular purposes; and to that end such act required the annual appropriations to be first made, and their amount ascertained, and then that the levy and assessment should be made by ordinance, for the amount so ascertained. And this is not changed by the act of May 28, 1879.

2. Where the only attempt made to levy and collect village taxes for the year 1882, was the making and delivery by the village clerk to the county clerk, of a certificate, in substance as follows: "County clerk, B. county: At a meeting of the board of trustees of the town of M. S., county of B., and State of Illinois, a tax of seventy-five cents on the hundred dollars was levied to meet expenses of town. C. D., town clerk,"—and no appropriation ordi-

8—112 ILL.

nance was passed, or ordinance levying the tax, it was *held*, that such taxes were not lawfully levied, and that judgment against lots for such tax was properly refused. The failure to pass the necessary ordinance in such case is not a merely formal defect.

3. The act of May 23, 1877, relating to municipal taxes, requires the assessment and collection of such taxes, in all cases, to be in the manner provided for in article 8 of the general Incorporation law, which is by an ordinance fixing the appropriations and levying the amount, and certifying a copy thereof to the county clerk; and without observing these prerequisites, the tax levied will be invalid.

4. SAME—*fixing amount of appropriations—as to the mode or form— and the matter of publication.* An ordinance of a city, town or village, fixing the amount of all appropriations, and declaring the same as the amount of taxes to be raised for any given year, can not be taken as a by-law or permanent local regulation; nor is its publication essential before a certified copy thereof can be fitly filed with the county clerk. It would seem to be all-sufficient to constitute such ordinance, that the board of trustees of the town should, by resolution, or by any other proceeding entered upon their record, declare the ascertained amount of all appropriations, and indicate their determination that such sum shall be levied and assessed upon the taxable property.

5. EVIDENCE—*certified copies from official records—and certifying, generally, as to what record contains.* Public officers having lawful custody, as such, of books, records or journals, may authenticate, by certificate, a copy of any extract from such record or journal; and by the rules of the common law, such certificate is competent evidence that the copy is correct, and such copy is evidence of the contents of the record. But such officer, unless authorized so to do by statute, can not lawfully, by strict law, certify, generally, to any fact as shown by his records, or to any conclusion he may draw from an inspection of the record.

6. So where a village charter declares that the board of trustees shall "require their clerk to keep a fair journal and record of all their proceedings * * * in a book provided for that purpose," the adoption and contents of an ordinance directing the levy of a certain amount of taxes, can not be shown by the town clerk's certificate that such board has required so many cents on the hundred dollars value of property in the town to be levied and collected. In such case, the best evidence of the acts and proceedings of the trustees must consist of the record thereof in the book kept by the clerk. To make a certified copy of entries in such book admissible in evidence, the clerk's certificate should show that it is a true copy of the originals, as entered in such record.

APPEAL from the County Court of Brown county; the Hon. THOMAS J. RUSSELL, Judge, presiding.

This was an application, made at the May term, 1883, of the county court of Brown county, by the county collector of that county, for judgment against certain town lots and lands of appellee, lying within the incorporated town of Mound Station, for certain delinquent municipal taxes of that town for the year 1882. Appellee interposed objections to the application, and the case was submitted to the county court upon the following admissions as to the facts:

Appellee admitted that the town was incorporated and organized in 1862, under the general law of 1845, for the incorporation of towns and villages. Appellant admitted "the only effort or attempt made to levy or assess any taxes in and for the town of Mound Station, was by and in the manner specified in objection No. 2, filed" by appellee, which objection alleged that "the only authority, and only way, mode or manner in or by which said supposed taxes were levied or extended, was by and in pursuance of the delivery by the clerk of the board of trustees of said town, to the county clerk of said county," of a paper or document, in the words and figures following, to-wit:

"MOUND STATION, *August 3, 1882.*
"*County Clerk of Brown County:*

"At a meeting of the board of trustees of the town of Mound Station, county of Brown, and State of Illinois, a tax of seventy-five cents on the hundred dollars was levied, to meet expenses of town.

WM. N. MUMFORD, *Town Clerk.*"

Appellant also admitted that the board of trustees "did not, by ordinance, levy, or in any way whatever indicate or specify, the amount of money they desired or intended to be raised by the supposed levy or imposition of said alleged taxes, and that the said board of trustees did not levy or impose the supposed taxes *by ordinance;*" and "no copy of any ordinance levying or attempting, or purporting to levy, said

supposed taxes, or any part thereof, was ever transmitted, presented or delivered to or filed with said county clerk." No other proof was offered, save the delinquent list, showing on its face the taxes in question as delinquent, in a column headed "corporation tax," in lines showing the lands and lots in question to lie within the limits of the town of Mound Station.

The county court refused to enter judgment for these taxes, and sustained the objections thereto, founded upon the above facts.    This is an appeal by the county collector from that judgment.

Messrs. IRWIN & DOBBIN, and Mr. J. J. McDANNOLD, for the appellant.

Mr. W. L. VANDEVENTER, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

By an act approved May 23, 1877, it was provided "that all cities, villages and incorporated towns in this State, whether organized under the general law or special charter, shall assess and collect their taxes in the manner provided for in article (8) eight of the act entitled 'An act to provide for the incorporation of cities and villages,' approved April 10, 1872, and in the manner provided for in the general revenue laws of the State; and all acts and parts of acts inconsistent with the provisions of this act are hereby repealed."    The act of April 10, 1872, (mentioned in the act of May 23, 1877,) required the board of trustees of villages to ascertain the total amount of appropriations for all corporate purposes, legally made, and to be collected from the tax levy of each fiscal year, and by ordinance to levy and assess such amount so ascertained, upon the real and personal property within the village, subject to taxation, as the same is assessed for State and county purposes for the current year; and that a certified copy of such ordinance should be filed with the

county clerk of the proper county, whose duty it was made by the act to ascertain the rate per cent which, upon the total valuation of all property subject to taxation in the village, as assessed and equalized for State and county purposes, will produce a net amount not less than the amount so directed to be levied and assessed, and to extend such tax in a separate column, upon the book or books of the collector of State and county taxes. The general Revenue law (mentioned in the act of May 23, 1877,) provided as follows, in section 122: "The proper authorities of towns, townships, districts and incorporated cities, towns and villages, collecting taxes under the provisions of this act, shall, annually, * * * *certify* to the county clerk the several amounts which they severally require, to be raised by taxation."

It is contended by appellant that the taxes in question were in this case certified to the county clerk, in compliance with section 122 of the general Revenue law, and by a fair construction of the act of May 23, 1877, it was not necessary to comply with the provisions of article 8 of the act relating to cities and villages,—and hence it is not required of an incorporated town that the sum to be certified shall be limited to the amount of appropriations made previously, by ordinance. The contention in substance is, that the act of May 23, 1877, should be construed as though it said the several municipalities should assess and collect their taxes in the manner provided for in article 8, *or* in the manner provided for in the general revenue laws. We find no warrant for this construction. The language requires the assessment and collection to be, in all cases, "in the manner provided for in article 8, * * * *and* in the manner provided for in the general revenue laws." It is no doubt true, that where the sense and purpose of a statute demand it, the conjunction "and" may be construed as though it were written "or;" but in the absence of some such necessity, the words of a statute are not to be so changed.

The contention is, that this incorporated town might lawfully assess and collect taxes, either by merely complying with the general Revenue law, or by following the provisions of article 8,—that *either* is sufficient, and *both* are not required. We can not approve this position. In *Binkert* v. *Jansen et al.* 94 Ill. 292, this court, speaking of the act of 1877, said: "It is obvious it was the intention of the legislature to provide a *uniform* mode for assessing and collecting municipal taxes." In *Weber* v. *Traubel et al.* 95 Ill. 427, (referring to what was *thus* said in *Binkert* v. *Jansen et al.*) this court said: "We are entirely satisfied with the correctness of the views there expressed." And again, in *Sparland* v. *Barnes et al.* 98 Ill. 597, we said: "We held in *Binkert* v. *Jansen,* and in *Weber* v. *Traubel,* that *the only object* of the act of 1877 was to provide a *uniform* system for the assessment and collection of taxes in towns and cities, without regard to whether they were incorporated under special charters or the general Incorporation law." If there be two modes provided, as contended by appellant, either of which will answer, there surely is not a "*uniform* mode" established, or a "uniform system" provided. It was obviously the intention of the legislature, in the act of May 23, 1877, to require villages and incorporated towns, as well as cities, to follow a mode of assessment and collections which would limit the amount to be assessed and collected, so as not to exceed the amount before that time specifically appropriated for particular purposes, and to that end required the annual appropriations to be first made, and their amount ascertained, and that then the levy and assessment should be made by ordinance, for the amount so ascertained.

But it is suggested that if compliance with article 8, in this regard, be required, it was wholly unnecessary to require a compliance with the general revenue laws, inasmuch as article 8 requires not only the amount to be certified to the county clerk, but specifies the mode in which the same shall

be certified. It may be true that the provisions of article 8 of the City act of 1872 cover all the requirements in this regard found in section 122 of the general revenue laws, and is more specific in its requirements in that regard; but it must be remembered that there are other provisions of the general revenue laws in relation to the collection of taxes, and the act of 1877 under consideration does not confine its requirements to section 122 of the general revenue laws. The manner of assessing and collecting is to follow article 8 of the act relating to cities and villages, and all the provisions of the general revenue laws bearing upon the mode of assessing and collecting taxes found in the general revenue laws. It is enough that the provisions of article 8 and section 122 are not incompatible with each other. They both require the amount to be raised by taxation to be certified to the county clerk, and article 8 points out, specifically, the manner in which such certifying shall be done.

It is said the collection of a tax is not to be avoided on account of a want of the exact form pointed out in the statute. Matters of mere form are not to be regarded; but the provisions of article 8 in the City act, intended to limit the net amount to be raised to the amount of previous appropriations, are matters of substance and not of form.

Some comments are made as to the meaning of the word "ordinance," and it is suggested that ordinances are by-laws or permanent local regulations, and are not valid unless published, etc. An ordinance for the purpose of fixing the amount of all appropriations, and declaring the same as the amount of taxes to be raised for any given year, it is not conceived is a by-law or a permanent local regulation, or that its publication is essential before a certified copy thereof can fitly be filed with the county clerk. The word "ordinance," in this regard, we think is not used in that sense in this statute. It would seem to be all-sufficient to constitute an ordinance in the sense of this statute, that the board of

trustees should, by resolution, or by any other proceeding entered upon their journal or record, declare the ascertained amount of all appropriations, and indicate their determination that such amount shall be levied and assessed upon the taxable property within the town.

Counsel do not agree in their construction of the language of the admissions upon which the county court rendered judgment in this case. Counsel for appellant contend that it is admitted that at a meeting of the board of trustees a tax of seventy-five cents on the hundred dollars was levied by said board, to meet the expenses of the town. Counsel for appellee insists that it is admitted that no attempt was made by the board to levy any tax, or to fix any amount to be levied. The language of the admission in this regard is, that "the *only authority,* and only way, mode or manner in or by which said supposed taxes were levied or extended, was by and in pursuance of *the delivery* by the clerk of the board of trustees of said town, to the county clerk," of the certificate set out in the record; and it is also admitted that "the board of trustees did not, *by ordinance,* levy, or in any way whatever indicate or specify, the amount of money they  *  *  * intended to be raised by the supposed levy or imposition of said alleged taxes, and that the said board of trustees did not levy or impose the supposed taxes *by ordinance.*" If we are right in our suggestion as to what would constitute *an ordinance* in this respect, within the meaning of the statute, it follows that the action of the town clerk in making and delivering this certificate was the first and only foundation upon which the whole attempt to collect these taxes rests, and that the trustees did not, in any way, fix the amount to be raised. The act under which this town of Mound Station was organized, declares that the board shall "require their clerk to keep a fair journal and record of *all their proceedings,*  *  *  * in a book provided for that purpose." It is plain that the best evidence of the proceedings of the trustees must consist

of the record of the same in the book kept by the clerk. It is also plain that such trustees could not lawfully impose any tax upon the property within such town, except by proceedings reduced to writing, and recorded in that town record. The form of such proceedings may not be important. It may not be necessary that the same should begin with the words, "Be it ordained," but it is essential to the valid imposition of such a tax that a written entry should be made in the record of the proceedings of the board, showing the determination of the board that a tax of a given amount should be collected. Not only does the certificate of the clerk fail to show the contents, or even the existence, of such an entry, but the admission in the case is, that no such thing was done *by ordinance,*—admits that no such entry was ever made, or even that any such certificate was ever directed to be made. The admission is, that the only effort made to levy and assess this tax was by and in pursuance of the delivery to the county clerk of a certificate of the town clerk, dated August 3, 1882, and saying that at a meeting of the trustees a tax of seventy-five cents on the hundred dollars was levied, etc. There is no admission that the certificate is true. On the contrary, the admission that no effort was ever made to levy these taxes except under and by the delivery of this certificate, and that there was no ordinance, necessarily covers the proposition that no such effort was made and entered on their books by the trustees before the certificate was made.

It is suggested, in substance, that the admission of the delivery of the certificate shows such action by the trustees, because the certificate says the tax was levied by them. There would seem force in this suggestion, if, in absence of the admission that there was no ordinance, such a certificate of the town clerk were required by law, or authorized by law, or was by law competent evidence of the truth of the matter therein stated. But this is not the case. Public officers having lawful custody, as such, of books, records or journals,

may authenticate, by certificate, a copy of any extract from such journal or record, and by the rules of the common law such certificate is competent evidence that the copy is correct, and such copy is evidence of the contents of the record; but such officer, *unless authorized so to do by statute,* can not lawfully, by strict law, certify, generally, to any fact as shown by his records, or to any conclusion he may draw from an inspection of the record. In the matter under consideration, the statute gives no such authority, but, as we have seen, specifies that the mode of certifying to the county clerk the amount of tax to be raised, shall be by filing a copy of the ordinance fixing the amount levied and assessed, and from this the county clerk must extend the tax. How strict a compliance with this statute is necessary to give *prima facie* authority to extend the tax, we do not decide; but this certificate surely does not comply with the requirements of the statute, and we have an admission that the trustees did not indicate the amount *by ordinance,*—which, as we have seen, means that this was not done by resolution, or any other proceeding entered upon their journal. In such case we can not say the defect is merely that of form. If such a proceeding was really had by the trustees, we do not say that to sustain the levy the same might not be entered in the town record even after the tax was extended; but nothing of this kind appears in this case.

It seems to be thought that the amendment of section 1, of article 8, in the act relating to cities and villages, made May 28, 1879, (Sess. Laws, 1879, page 66,) has in some way amended this act of 1877, in this respect. We can not see that this amendment has in any way affected the act of 1877, so far as it affects this question.

The judgment in this case is therefore affirmed.

*Judgment affirmed.*