## Bradford v. Fiscal Court of Bracken County, et al.

(Decided June 19, 1914.)

### Appeal from Bracken Circuit Court.

1.  Counties—Sections 157 and 158 of the Constitution—Limitation Imposed by Upon Power of County to Create Indebtedness.— Both Sections 157 and 158 of the Constitution impose a limitation on the power of the counties to create indebtedness; the first providing a barrier against any character or amount of indebtedness, for any purpose, beyond the revenues of the year, without a vote of the people; and the second an additional barrier against the creation of an indebtedness in the aggregate.

2.  Counties—County Indebtedness—What It Is.—A debt payable in the future is no less a debt than if payable-presently, or immediately upon its creation. Likewise, if a contract or obligation contemplates in any contingency a liability to pay when the contingency occurs, the liability is fixed and absolute, and in such case the debt exists, differing from an immediate, unqualified promise to pay only in the manner by which it was incurred.

3.  Counties—A Debt Cannot Be Created by a County Beyond the Limit Fixed by Section 157 of the Constitution, by an Appropriation Payable in Succeeding Years Out of the Revenues of Such Years.—It is not contemplated by the Constitution that a county, even for the purpose of building a court-house, shall, without a vote of the people, create in one year, a debt to be paid in subsequent years, and for the payment of which no provision can be made out of the income and revenue provided for the year in which the indebtedness is created.

H. P. WILLIS for appellant.

CHARLES CARROLL, G. W. L. Smith for appellee, Falls City Construction Company.

GEORGE B. KINNEY for appellee, Fiscal Court.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This appeal brings to us for review a judgment of the circuit court of Bracken County refusing to enjoin the appellees, fiscal court of Bracken County, the magistrates composing same, the Falls City Construction Company and others from performing a contract for the construction of a courthouse for Bracken County, the action having been brought by the appellant, S. W. Bradford, a citizen and taxpayer of that county.

It is admitted that prior to the time the contract sought to be enjoined was entered into the courthouse of Bracken County was in such a dilapidated and unsafe condition as to make it unfit and insecure as a place for holding the courts of the county, and that it had been

condemned for that reason by the grand jury of the county as well as by architectural experts appointed by the fiscal court to examine it. It appears that the fiscal court, following the condemnation of the building, entered into a contract with the appellee, Falls City Construction Company, to build so much of the new courthouse as would include the foundation and walls to the first story window-sill course, for which the latter was to be paid $17,000.00. The work required by this contract was performed by the appellee, Falls City Construction Company, and paid for by the fiscal court, the money therefor having been raised by the assessment and collection, before the contract was made and work done, of an ad valorem tax of ten cents on each one hundred dollars of property in the county for and during the previous four years. It appears, however, that after so much of the courthouse as has been described was erected and paid for, the additional sum of $42,125.00 was required to complete the building according to the plans and specifications adopted for its construction by the fiscal court. In order to complete the courthouse a building commission consisting of the county judge, county attorney and county clerk of Bracken County, assuming to act in pursuance of authority conferred by an act of the General Assembly, approved March 31, 1910, as amended by an act approved February 9, 1914, the former being entitled: ''An Act requiring fiscal courts to levy a tax to create a sinking fund for the purpose of erecting and equipping suitable courthouses and other public buildings and prescribing penalties for failure to perform such duties,'' by direction of the fiscal court made a contract with the appellee, Falls City Construction Company, for the completion of the building at the price of $42,125.00, payable:

In cash when earned under the contract....$   915.00
On January 1, 1915................................................. 4,330.00
On January 1, 1916 ............................................... 4,180.00
On January 1, 1917 ............................................... 4,030.00
On January 1, 1918 ............................................... 4,380.00
On January 1, 1919 ............................................... 4,200.00
On January 1, 1920................................................. 4,020.00
On January 1, 1921 ............................................... 4,340.00
On January 1, 1922 ............................................... 4,130.00
On January 1, 1923 ............................................... 4,420.00
On January 1, 1924 ............................................... 3,180.00

The above contract was, in February, 1914, reported by the building commission to the fiscal court and was by that court duly approved as appears from the following order then entered of record:

"It is ordered, adjudged and decreed by the fiscal court of Bracken County, Kentucky, that all of said foregoing contract made by the building commissioners of Bracken County with Falls City Construction Company for the erection and completion of a new county court-·house building, the same having been made pursuant to the order and direction of this court, and having been duly read and understood, it is hereby ratified and approved as provided by the terms of the act of the General Assembly creating said building commission. And pursuant to said Act, it is ordered by the court that the tax levy made by this court on July 22, 1913, setting aside out of the county levy of fifty cents on each one hundred dollars, ten cents on the hundred dollars for the courthouse purposes, be and said tax levy is hereby ratified and approved and the proceeds of said tax of ten cents on the hundred dollars is ordered transferred and paid over to said commission; and it is further ordered that ten cents on the hundred dollars out of the regular county tax of fifty cents on the hundred dollars authorized by law to be levied for county purposes, shall be annually levied, set apart and dedicated for courthouse purposes; and when levied and collected annually shall be devoted exclusively to the purpose of paying for the construction of a new courthouse building, and said funds derived from said annual tax of ten cents on the hundred dollars shall be paid over to the treasurer of the building commissioners of Bracken County to be used by said treasurer in paying the contract price and certificates of payment provided for in said contract as they become due and mature. It is further ordered, adjudged and decreed that said tax so levied, set apart and dedicated, with the right to receive the funds arising therefrom to the extent and amount of said contract price, be and the same is hereby transferred, set over and confirmed to said contractor as provided by the terms of said act for the payment price, but said contractor shall look only to the proceeds as the same is levied and collected, and shall have no claim upon, or obligation of this fiscal court of Bracken County, Kentucky.''

The validity of the contract thus made by the building commission with the appellee, Falls City Construction

Company, and that of the above order of the fiscal court, were attacked by appellant's petition upon the following grounds: (1) That the building commission had no authority in law to make the contract or to build a courthouse under its provisions; (2) That the acceptance and approval of the contract by the fiscal court was without authority of law; (3) That the contract, as well as its approval by the fiscal court, was and is illegal and violative of section 157 of the Constitution of the State, in that it imposed upon the county of Bracken and caused it to incur an indebtedness in excess of the revenues of the county for the year 1914, without the assent of two-thirds of the voters of the county, voting at an election held for the purpose of determining whether such indebtedness should be incurred.

These contentions naturally suggest the inquiry: (1) What is the meaning of the term "indebtedness" as used in section 157 of the Constitution; (2) Does this contract create such an indebtedness as is prohibited by that section? Section 157, Constitution, provides:

"The tax rate of cities, towns, counties, taxing districts and other municipalities, for other than school purposes, shall not, at any time, exceed the following rates upon the value of the taxable property therein, viz: * * * for counties * * * fifty cents on the hundred dollars, unless it should be necessary to enable such * * * county, * * * to pay the interest on, and provide a sinking fund for the extinction of indebtedness contracted before the adoption of this Constitution. No county * * * shall be authorized or permitted to become indebted, in any manner or for any purpose, to an amount exceeding, in any year, the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose; and any indebtedness contracted in violation of this section shall be void. Nor shall such contract be enforceable by the person with whom made; nor shall such municipality be authorized to assume the same."

It is patent that the prohibition declared in the foregoing section of the Constitution is emphatically against the county's becoming indebted—that is, incurring a liability beyond the limit therein prescribed without the assent of two-thirds of the voters thereof. A debt payable in the future is manifestly no less a debt than if payable presently, or immediately upon its creation; likewise, if a contract or obligation contemplates, in any con-

tingency, a liability to pay when the contingency occurs, the liability is fixed and absolute and in such case the debt exists, differing from an immediate unqualified promise to pay only in the manner by which it was incurred.

In City of Covington v. McKenna, 99 Ky., 508, the question was whether, under the provisions of section 3101, Kentucky Statutes, authorizing certain street improvements in cities of the second class, which were to be paid for by the abutting property owners, and wherein the property owner was given the option either to pay in cash or in ten annual payments, and authorizing, in order to provide for the immediate payment of the cost of improvement where the property owner elects to pay on the ten year plan, the borrowing of money and the issuing of bonds therefor "pledging the faith and credit of the city for the payment of the principal and interest thereof," the bonds in ten series maturing annually through the ten year period, and it was held that if the issuing of the bonds would cause the city to become indebted to an amount exceeding, in any year, the income and revenue provided for such year, the question as to whether they should be issued should be submitted to a vote of the people and receive the assent of two-thirds of them at an election to be held for that purpose; and that this would have to be done, although the bond issue was to be "in anticipation of the collection of a special assessment for such improvement   *   *   *   from such property holders." In the opinion it is said:

"The main question remaining is whether under section 157 of the Constitution, the issue of the bonds in question would cause the city to become indebted to an amount exceeding, in any year, the income and revenue provided for such year. It is claimed for the appellee that the amount of the debt incurred and maturing each year will be met by the special tax, and will not exceed the city income provided for that year. This is clearly erroneous. If it is a debt of the city it is incurred in the year in which the bonds are issued, though it does not then mature. It is an anticipation of the income of future years.   *   *   *   We, therefore, conclude that the bonds proposed to be issued would create an indebtedness, and being a proposition of the income of future years, it would be an amount exceeding the income provided for the year in which they might be issued, within the

meaning of section 157 of the Constitution, and must, therefore, be submitted to the vote of the people."

In Beard, etc. v. City of Hopkinsville, etc., 95 Ky., 239, quoted with approval in the case, *supra,* and reported with extensive annotations in 23 L. R. A., 403, it appears that the city of Hopkinsville made a contract for the construction and maintenance of a system of water works and of an electric light plant, by the terms of which the city was to pay for the use of a certain number of hydrants and a certain number of electric lights for five years, the sum of $5,500.00 per year as rent, and at the expiration of five years the contract for water rental was to continue fifteen years longer at $4,500.00 per year, the city having an option to renew the contract for lights at $1,000.00 per year. The annual rentals were to be met out of the annual revenues without exceeding the tax rate allowed by the Constitution. It was held that by the contract the city incurred an indebtedness within the prohibition of the Constitution and therefore the contract was void. In the opinion, speaking of the contention of the appellees that when liabilities are created and appropriations are made which are within the limits of the revenue accruing to meet them, they are not debts within the meaning of the prohibition of the Constitution, the court said:

"We suppose, however, that if the words used in the Constitution are to be given their usual and commonly accepted meaning by the contract in question, the city does 'incur an indebtedness' in the sense these terms are used in the Constitution; and that this indebtedness is in excess of the limitation imposed is apparent." Springfield v. Edwards, 84 Ill., 626; Culbertson v. Fulton, 127 Ill., 30; Sackett v. City of New Albany, 88 Ind., 473; Bonta v. Fiscal Court of Mercer County, 144 Ky., 241. The opinion in Overall v. City of Madisonville, 125 Ky., 684, does not militate against the conclusion we have expressed. In that case it is said:

"Appellant contends that the city could not legally contract for a light plant in piecemeal. The reason assigned is that no part of it is valuable as a public utility till all of it is assembled. The reason is not satisfactory. If the plant was not run after it was bought, it would equally fail to meet the public requirements. Yet that fact ought not to avoid an otherwise perfectly valid contract for its construction. In the matter of buying and installing such a plant the city is left wholly to the judg-

ment of its council as to the kind, cost, when and where it shall buy, and how much at a time. There is only one limitation upon the city; that is, it shall not become indebted beyond the income and revenues of the year without the assent of two-thirds of the voters voting on the question. The Constitution did not design an interference with the free exercise of a city's judgment as to its expenditures for public purposes, provided it had the means at hand to pay for them. It did not discourage cash payments, but rather encouraged them. The course of appellee city in buying only what it could pay for, and as it could pay for it, is one that might be more frequently followed with satisfactory results to taxpayers.''

We will next consider whether by the contract complained of by appellant in this case Bracken County incurred such an indebtedness as is prohibited by section 157, Constitution. It is conceded that the total revenue of Bracken County for county purposes that will be realized for the year 1914 from taxation under the levy of fifty cents on the hundred dollars allowed by section 157, Constitution, is $17,041.21, and the poll tax $2,576.00, the whole aggregating $19,617.21. Manifestly the $42,125.00 appropriated by the fiscal court for completing the courthouse is far in excess of the total income and revenue of the county for the present year, 1914; and if its appropriation at one time in the present year, though payable in succeeding years out of the revenues for such years, is to be regarded as an indebtedness prohibited by the section of the Constitution, *supra,* the action of the fiscal court in making the appropriation was void. That it is such an indebtedness is, we think, fully established by the authorities referred to, and others that we will yet consider.

In Knipper v. Covington, 109 Ky., 187, it was held that both sections 157 and 158, Constitution, impose a limitation on the power of the counties to create indebtedness; the first providing a barrier against any character or amount of indebtedness, for any purpose, beyond the revenues of the year without a vote of the people; and the second an additional barrier against the creation of indebtedness in the aggregate.

In Fiscal Court of Franklin County v. Commonwealth, 139 Ky., 307, the proposition was to incur an indebtedness for a new courthouse, for which Franklin County had on hand an available fund of only $23,000.00, making it necessary to raise by taxation the additional sum re-

quired, which admittedly would have caused the county to incur an indebtedness in excess of its income and revenue for the year. It was insisted for the fiscal court that as the old courthouse was unfit for use and had been condemned, which created an emergency and necessitated the erection of a new courthouse, and there was a statute of the State which required it to keep in repair and good condition a courthouse for the county, these facts took the case out of the meaning of the sections of the Constitution, *supra,* and removed the prohibition declared by them against the incurring of the proposed indebtedness by the county without a vote of the people. In overruling these several contentions we in the opinion said:

"The fund of $23,000.00 that is on hand would be entirely inadequate, and an indebtedness in excess of the revenue provided for the year would have to be incurred. This cannot be done under section 157 of the Constitution without a vote of the people. But, as the indebtedness of Franklin County is now as great as section 158 allows, the people themselves cannot vote a greater indebtedness unless in case of emergency, which as we have said does not exist. To build a courthouse such as is contemplated would necessarily involve the incurring of an indebtedness of thousands of dollars; and, if such an indebtedness may be created for that purpose under the constitutional provisions above quoted, it is hard to see what practical value these provisions would be to the municipalities of the State. The fiscal court may make a levy from year to year up to the constitutional limit, and may set apart so much of this levy for the building of a new courthouse as may be spared after meeting the other necessary expenditures, and in this way in a few years a sufficient courthouse fund may be accumulated; but the fiscal court is without authority now to make a levy sufficient to build a courthouse or to create an indebtedness for that purpose beyond the revenues provided for the year."

The latest decision of this court on the question here involved is in Southern Bitulithic Co. v. DeTreville, 156 Ky., 513, in which the entire subject was thoroughly considered by the whole court and elaborately discussed in the opinion, one of the concluding paragraphs of which thus tersely disposes of the question under consideration:

"It is not contemplated by the Constitution that a municipality (or county) shall without a vote of the people create in one year a debt to be thereafter paid in subsequent years, and for the payment of which no pro-

vision can be made out of the income and revenue provided for the year in which the indebtedness is created."

In our opinion there is no escape from the conclusion that the contract sought to be enjoined by appellant is in contravention of section 157 of the Constitution, because it creates an indebtedness on the part of Bracken County exceeding, in the year in which it is made, the income and revenue provided for such year, without first obtaining the assent of two-thirds of the voters of the county, voting at an election held for that purpose. Neither the act of March 21, 1910, nor the amendment of February 9, 1914, will enable the fiscal court of the county or its building commission, created by the latter, to evade the mandatory provisions of section 157, Constitution. The provisions of the amendment containing the extraordinary powers conferred upon the building commission, cannot be allowed to override the Constitution. The amendment in question makes the building commission a corporation, gives it the power to contract for the erection of the public buildings therein enumerated, and declares the debts it creates in so doing shall be binding upon the commission in its corporate capacity, but shall not impose any obligation upon the county; yet in point of fact, the commission is a creature of the fiscal court, for that court must determine the necessity for erecting the public building, order the commission to contract for its erection and approve the contract when made by it; and, in addition, provide the funds with which to pay for the work, which funds must be paid by the county and raised by taxation upon levies made by the fiscal court. So, after all, the credit of the county is pledged by the act to the carrying out of the contract made by the building commission. Indeed, the act attempts to give the building commission, the contractor to whom it may let the work of erecting the public building, or any taxpayer of the county the right, following its completion, by mandamus, to compel the fiscal court to levy a tax for the purpose of paying for same, if it should refuse to do so.

In Bonta v. Fiscal Court of Mercer County, 144 Ky., 241, we had occasion to construe the act of March 21, 1910, and in the opinion said:

"By an act of the General Assembly, approved March 21, 1910 (Acts of 1910, page 154) the fiscal court of any county which is unprovided with a courthouse or jail, is required to levy and collect, annually, a tax of ten cents on each $100.00 worth of taxable property in such county,

to create a sinking fund for erecting and equipping a suitable courthouse or jail therein.   Section 1, of the act, provides: 'That it shall be the duty of the fiscal court or court of claims in each and every county in this Commonwealth, in which there is no courthouse or jail, to levy and have collected, annually, a tax of not less than ten cents on each $100.00 worth of taxable property in such county as shown by the last returned assessment, and set the same apart for that purpose until a sufficient fund shall have been accumulated to erect and equip, at the county seat, a convenient and suitable courthouse and jail for said county; said fund when so levied and collected shall be used only for the purposes for which it was created.'   If there were any room to doubt that the provisions of sections 1840 and 1882, Kentucky Statutes, confer upon the fiscal court of a county unprovided with a courthouse, power to levy and collect a tax not exceeding ten cents on each $100.00 worth of taxable property therein, for the erection of a courthouse, clearly no such doubt can arise from the language of the act of March 21, 1910, which is mandatory in its terms and, therefore, compulsory upon the fiscal court.   It is not to be understood, however, that the levy it requires at the hands of the fiscal court must be made without regard to the provision of section 157 of the Constitution, which forbids a levy in any county in excess of fifty cents, exclusive of school tax, upon each $100.00 worth of its taxable property; unless it should be necessary to enable such county to provide a sinking fund to pay an indebtedness contracted before the adoption of the present Constitution.''

Obviously, what is said in the case, *supra,* of the original act, may also be said of the amendment of February 9, 1914, viz.: it is not to be understood as requiring the fiscal court to incur for the county an indebtedness, or make a levy to pay it, in excess of the limitation imposed by section 157, Constitution, and if such is the meaning of the amendment it is to that extent clearly unconstitutional.

We find little force in appellees' claim of the existence of an emergency that made the building of Bracken County courthouse such a governmental necessity as authorized the contract made by the building commission with the approval of the fiscal court.   It is doubtless true that Bracken County is badly in need of a courthouse, and courthouses are things of public necessity as places of convenience for the due administration of the

laws of the State and the protection of the public records, but buildings other than such as have been designed and erected for the purpose, have often been temporarily rented and occupied for holding courts and preserving records of a county, and it is better that Bracken County undergo such temporary inconvenience than that its fiscal court shall be allowed to override a plain provision of the Constitution.

The fiscal court can secure a courthouse for the county. It may raise a fund for that purpose by the sale of bonds, provided authority to issue and sell same be obtained by the assent of two-thirds of the voters of the county voting at an election for determining whether the indebtedness shall be incurred, or by the more tedious, though equally legal method, of levying and collecting a tax of ten cents on the hundred dollars in each year and deferring further work on the building until a fund is thus raised to complete it, or by doing the work by piece-meal, contracting each year for the work done in such year and levying in each year a tax within the constitutional limit to pay for the work on the building done therein.

The case of Hopkins County v. St. Bernard Coal Company, 114 Ky., 153, does not sustain appellees' contention. The emergency or state of case therein held to authorize the county to incur an indebtedness in excess of the annual revenue of the county, without the assent of two-thirds of the voters, as required by section 157, Constitution, was because it was necessary to the suppression of insurrection and mob violence existing in the county; it being held that the object of section 157, Constitution, "was to protect the people from their own imprudence and that of their officials." The opinion further held that:

"The duty of preserving the public peace and protecting life and property can not be avoided because the income provided for the year by the fiscal court will be insufficient to pay the guards provided by the statute. It is the duty of the fiscal court to provide a sufficient fund for this purpose when the necessity arises, if it has not been provided before. It was not the purpose of the Constitution to disable the municipalities of the State from maintaining the public peace or protecting the good name of the State. On the contrary, the Constitution was enacted by its makers, 'grateful to Almighty God for the civil, political and religious liberties we enjoy,' and

that 'the great and essential principles of liberty and free government may be recognized and established.' See preamble."

No such conditions appear in this case; the debt complained of by appellant was voluntarily incurred and is the character of debt section 157, Constitution, imperatively declares the county cannot incur, without the assent of two-thirds of its voters.

It follows from what has been said that the circuit court erred in refusing the injunction and dismissing the petition. Wherefore the judgment is reversed and cause remanded with directions to perpetuate the injunction and for other proceedings consistent with the opinion. Whole court sitting.